UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| MZEE BARAKA HARRIS, | ) | CASE NO.: C06-0954-JLR |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| BENEDICT MARTINEZ, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

INTRODUCTION AND SUMMARY CONCLUSION

Petitioner is in the custody of the Washington Department of Corrections pursuant to his 2002 King County Superior Court convictions for first degree rape and second degree assault.[1] He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from those convictions. Respondent has filed an answer to the petition and has submitted relevant portions of the state court record. The briefing is now complete, and this matter is ripe for review. This Court, having reviewed the petition, respondent's answer thereto, and the state court record,

_____

[1] Petitioner was also convicted on a charge of first degree kidnaping, but that conviction was vacated at the time of petitioner's sentencing.

01 concludes that petitioner's federal habeas petition should be denied and this action should be

02 dismissed with prejudice.

03 FACTS AND PROCEDURAL BACKGROUND

04    The Washington Court of Appeals summarized the facts of petitioner's case as follows:

05    Auburn police officers were summoned to a restaurant on the afternoon of
Sunday, March 3, 2002, by a call from Brandy Bonin-Gamble. All visible parts of
06 Bonin-Gamble's body showed marks of a severe beating, and she was extremely
distraught. Bonin-Gamble told police that her boyfriend, petitioner Mzee Harris, had
07 beaten her and was at the nearby Auburn Motel. An officer found Harris, drew his
gun and ordered Harris to stop, but Harris sped away in his truck. When the police
08 chased him, Harris abandoned his truck and escaped.

09    The emergency room doctor who treated Bonin-Gamble said her injuries were
"incredible" in that "there was not an inch on her body that did not have a hematoma,
10 or a bruise." Some bruises displayed the shapes of a belt strap, some a belt buckle
and one the sole of a shoe. The injuries appeared fresh and were consistent with
11 Bonin-Gamble's report that she had been kicked and beaten all over with fists, a belt,
and a baseball bat. Bonin-Gamble said that the day before, Harris came to her room
12 at a Motel 6, demanded entry, and began beating her. He then took her to his
parent's house and beat her with a baseball bat. Later he took her to a different motel
13 where he beat her through the night, including flailing her with his belt after making
her strip. Harris then took her to his friends' house and finally to the Auburn motel
14 where she used a ruse to flee.

15    Bonin-Gamble's injuries included vaginal lacerations and bruises to her
buttocks, inner thighs and labia, which led hospital staff to ask if she had been raped.
16 Bonin-Gamble said no while male police officers were present, but later told female
medical staff that Harris had repeatedly raped her. Vaginal swabs showed quantities
17 of semen containing sperm with motility suggesting recent sexual intercourse. DNA
testing showed the semen was Harris's.

18
    The State charged Harris with first degree kidnapping, three counts of first
19 degree rape, and two counts of second degree assault. It also charged him with
second degree assault for a February incident in which Bonin-Gamble said he stabbed
20 her leg with a barbecue fork.

21    At trial, in addition to Bonin-Gamble, the State called three young men who
stayed next door to her on Saturday, March 2, at the Motel 6. They testified they
22 heard a man shouting to be let in, followed by a woman's screams of pain. They later

01  saw the couple leave, the woman holding a towel to her swollen and bleeding face.
02  One of the men identified Harris from a photo montage.  Forensic evidence included
    an autographed baseball bat from a display case in Harris's parents' home with Bonin-
03  Gamble's and Harris's blood on it.  At the Auburn hotel, police found blood on a
    sheet and semen on a towel in Harris's room.  Police also found blood spatter and
    Bonin-Gamble's medication in the Motel 6 room.

04
05      Harris testified that he tried to end his relationship with Bonin-Gamble after
    she lied about using drugs and falsely claimed to be pregnant with his child.  On
06  Friday, March 1, however, Bonin-Gamble called him to her room at the Motel 6
    where they had sex.  She called him back to the room the next day, then appearing to
07  be injured and on drugs.  She said a former boyfriend, Rodney, had beaten her.
    Though Harris and Bonin-Gamble argued and she attacked Harris, he rented a room
08  at another motel for her.  He met friends at the new motel, and they left Bonin-
    Gamble alone while getting food from an Applebee's restaurant.  Harris slept in the
09  room with Bonin-Gamble that night, but they did not have sex.  At his parent's house
    the next day, she attacked him with the bat.  He later drove her to his friends' and the
10  Auburn motel, where he only ran from police because he feared they would shoot
    him.  Harris testified his only sex with Bonin-Gamble that weekend was the
    consensual sex on Friday.

11
12      Harris's family members testified that Bonin-Gamble had attempted to
    insinuate herself into his family.  Defense witnesses who saw Harris and Bonin-
13  Gamble over the weekend testified there were times that Bonin-Gamble was alone and
    could have escaped and that she did not ask for medical treatment.  In addition, a
14  defense medical expert challenged the State's expert testimony about how recent
    Bonin-Gamble and Harris's sexual intercourse could have been.

15      The jury found Harris guilty of first degree kidnapping, two of the counts of
16  first degree rape and both second degree assault counts for the March charges, but
    acquitted him of the February assault charge and did not reach a verdict on the third
17  count of rape.  The sentencing court found Harris committed the offenses with
    deliberate cruelty and imposed a 420-month exceptional sentence.

18
19  (Dkt. No. 18, Ex. 2 at 2-4.)

20      Following his sentencing, petitioner filed a direct appeal in the Washington Court of
21  Appeals.  However, he subsequently moved to dismiss his direct appeal on the grounds that the
22  issues he wished to raise were better presented by way of a personal restraint petition.  (*See id.*,

REPORT AND RECOMMENDATION
PAGE -3

01   Ex. 3.)  The Court of Appeals granted petitioner's motion, and petitioner's appeal was dismissed

02   on February 2, 2004.  (*Id.*, Ex. 4.)  The Court of Appeals issued its mandate on the same date.

03   (*Id.*, Ex. 5.)

04          On January 28, 2005, petitioner, through counsel, filed a personal restraint petition in the

05   Washington Court of Appeals.  (*Id.*, Ex. 6.)  Petitioner presented the following grounds for relief

06   to the Court of Appeals for review:

07          1.      Trial counsel's failure to call Warren Hagler to testify regarding his conversation with Brandy Gamble-Bonin constituted a denial of the Sixth Amendment

08   right to effective representation of counsel.

09          2.      Trial counsel's failure to present the Applebee's Restaurant receipt constituted a denial of the Sixth Amendment right to effective representation of

10   counsel.

11          3.      Trial counsel's failure to object to the prosecutor's inaccurate description of the evidence of a receipt for a purchase of food from McDonald's

12   restaurant, and to the prosecutor's inflammatory argument regarding what the evidence showed, constituted ineffective assistance of counsel and a violation of the

13   Sixth Amendment.

14          4.      The prosecutor's inflammatory appeal to passion and prejudice, by improperly suggesting to the jury that after raping and assaulting the complaining

15   witness the defendant made her go with him to a restaurant where he ordered food for himself but none for her, denied the defendant a fair trial contrary to the Due

16   Process Clause of the Fourteenth Amendment.

17

18   (Dkt. No. 18, Ex. 6 at 37-38.)

19          Petitioner also argued to the Court of Appeals that his exceptional sentence violated the

20   rule announced in *Blakely v. Washington*, 542 U.S. 296 (2004).  (*See id.*, Ex. 6 at 55-61.)  On

21   January 23, 2006, the Court of Appeals issued an unpublished opinion denying petitioner's

22   personal restraint petition.  (*Id.*, Ex. 2.)

REPORT AND RECOMMENDATION
PAGE -4

01   Petitioner thereafter filed a motion for discretionary review in the Washington Supreme

02   Court. (*Id.*, Ex. 8.) Petitioner presented the following issues to the Supreme Court for review:

03        1.    Did trial counsel's failure to interview or call exculpatory witness
     Warren Hagler to testify regarding his conversation with complainant Brandy Gamble-
04   Bonin constitute a denial of the Sixth Amendment right to effective representation of
     counsel?

05
          2.    Did trial counsel's failure to present exculpatory evidence in the form
06   of an Applebee's Restaurant receipt constitute a denial of the Sixth Amendment right
     to effective representation of counsel?

07
          3.    Did trial counsel's failure to object to the prosecutor's inaccurate
08   description of the evidence of a receipt from a McDonald's restaurant, and to the
     prosecutor's inflammatory argument, constitute ineffective assistance of counsel and
09   a violation of the Sixth Amendment?

10        4.    Did the prosecutor's inflammatory appeal to passion and prejudice, by
     improperly suggesting to the jury that after raping and assaulting the complaining
11   witness the defendant made her go with him to a restaurant where he ordered food
     for himself but none for her, deny the defendant a fair trial contrary to the Due
12   Process Clause of the Fourteenth Amendment?

13

14   (Dkt. No. 18, Ex. 8 at 1.)

15   Petitioner also argued to the Supreme Court that the cumulative prejudicial effect of trial

16   counsel's deficient conduct constituted ineffective assistance of counsel. (   *Id.*, Ex. 8 at 19.)

17   Petitioner did not present to the Supreme Court any claim that his exceptional sentence violated

18   the rule announced in *Blakely*.

19   On April 28, 2006, the Supreme Court Commissioner issued a ruling denying petitioner's

20   motion for discretionary review. (*Id.*, Ex. 9.) Petitioner moved to modify the Commissioner's

21   ruling denying review, but that motion was also denied. (*See id*, Exs. 10 and 11.) On July 25,

22   2006, the Court of Appeals issued a mandate terminating petitioner's personal restraint

REPORT AND RECOMMENDATION
PAGE -5

01 proceedings.  (*Id.*, Ex. 12.)

02      Petitioner, through counsel, filed the instant petition for federal habeas review under §

03 2254 on July 7, 2006.

04                                GROUNDS FOR RELIEF

05      Petitioner asserts the following four grounds for relief in his federal habeas petition:

06      **GROUND ONE**:  Ineffective assistance of counsel for failure to interview and call
      witness, Warren Hagler.

07

08      Supporting facts: Mzee Harris' sister, Malika Harris, met Warren Hagler in 2002, and
      he told her that he had spoken with Brandy Gamble-Bonin about the trial.  Brandy
      told Hagler that Mzee Harris had assaulted her but nothing more, that the police were

09      pressuring her to testify against Mzee Harris, and that the police threatened to put her
      in jail if she did not say what they wanted her to say.  Malika told her mother, Billie

10      Harris, about Warren Hagler, and Ms. Harris told Mr. Crowley before the trial.
      Crowley said he would contact Hagler.  Crowley never contacted Hagler, nor did

11      Hagler testify at trial.  Hagler states in his declaration he would have testified about
      Brandy's statements at trial on Mr. Harris' behalf if he had been contacted by

12      Crowley.

13      **GROUND TWO**:  Ineffective assistance of counsel for failure to present Applebee's
      Restaurant receipt into evidence.

14

15      Supporting facts:  Private investigator Bonnie Steckler, hired by Mr. Harris' defense
      counsel, interviewed both defendant and Mr. Carllen re the Applebee's Restaurant

16      receipt.  Mr. Carllen gave Applebee [sic] receipt to Ms. Steckler, who taped the
      receipt to a large sheet of paper and gave it to defense counsel Crowley before trial.

17      Crowley has lost documents that Steckler has given him in the past.  Steckler did not
      keep a copy of the receipt.  Ms. Steckler's declaration attesting to these facts were
      filed with Mr. Harris' PRP.

18

19      **GROUND THREE**:  Ineffective assistance of counsel for failure to object to
      prosecutor's misconduct at closing argument.

20      Supporting facts:  In closing argument, defense counsel emphasized that both
      Muhammad and Carllen testified that Harris left the motel room to go pick up food

21      leaving Brandy in the room.  "They get food, there is the receipt, it happened, Brandy
      was able to leave on her own accord, she didn't because she didn't want to.  Because

22      indeed, she had not been raped."  RP XI, 144.  In rebuttal, the prosecutor suggested

REPORT AND RECOMMENDATION
PAGE -6

01    that Muhammad and Carllen were lying when they said Harris left the room, and that
02    the proof of this was that while they talked about a receipts from Applebee's, no
     receipt was presented at trial. "Mr. Crowley mentioned a receipt. There was no
03    receipt from Applebee's . . . only a receipt from McDonalds." RP XI, 154-55. The
     McDonald's receipt actually listed two meals.

04    **GROUND FOUR**:  Ineffective assistance of counsel.

05    Supporting facts:  Grounds 1-3 accumulated to cause prejudicial effect.

06    **GROUND FIVE**: Challenge to exceptional sentence imposed under Blakely v.
     Washington, 542 U.S. 296 (2004) for judicial finding of deliberate cruelty.

07

08    Supporting facts: The sentencing court found Mr. Harris committed the offenses with
     deliberate cruelty and imposed a 420 month exceptional sentence. Findings of Fact
     & Conclusions of Law re: Exceptional Sentence filed 4/22/03.

09

10 (Dkt. No. 1 at 5, 7, 8, 10, and 14.)

11 <u>DISCUSSION</u>

12      Respondent states in his response to the petition that petitioner properly exhausted his state

13 court remedies with respect to the claims set forth in his federal habeas petition by fairly presenting

14 each of those claims to the Washington Supreme Court as federal constitutional claims.  While

15 respondent is correct that petitioner properly exhausted his first four grounds for federal habeas

16 relief, respondent overlooks the fact that petitioner actually identified five grounds for relief in his

17 petition and that the fifth ground for relief was not properly exhausted in the state courts because

18 the claim was never presented to the Washington Supreme Court for review.

19      However, the fact that petitioner failed to properly exhaust his *Blakely* claim, and that

20 respondent failed to respond in any way to this claim, does not preclude review of the claim by this

21 Court.  Section 2254(b)(2), provides that "[a]n application for a writ of habeas corpus may be

22 denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available

REPORT AND RECOMMENDATION
PAGE -7

01 in the courts of the State." As will be explained in more detail below, this Court deems petitioner's

02 *Blakely* claim to be without merit and therefore subject to denial even absent exhaustion.

<u>Standard of Review</u>

04       Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may

05 be granted with respect to any claim adjudicated on the merits in state court only if the state

06 court's decision was *contrary to*, or involved an *unreasonable application of*, clearly established

07 federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable

08 determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d) (emphasis

09 added).

10       Under the "contrary to" clause, a federal habeas court may grant the writ only if the state

11 court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

12 or if the state court decides a case differently than the Supreme Court has on a set of materially

13 indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  Under the "unreasonable

14 application" clause, a federal habeas court may grant the writ only if the state court identifies the

15 correct governing legal principle from the Supreme Court's decisions, but unreasonably applies

16 that principle to the facts of the prisoner's case.  *Id.*  The Supreme Court has made clear that a

17 state court's decision may be overturned only if the application is "objectively unreasonable."

18 *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

<u>Ineffective Assistance of Counsel</u>

20       Petitioner asserts in his petition that he was denied the effective assistance of counsel when

21 his trial counsel, John Crowley, failed to (1) interview and call witness Warren Hagler; (2) to

22 present the Applebee's Restaurant receipt as evidence at trial; and (3) to object to the prosecutor's

REPORT AND RECOMMENDATION
PAGE -8

01  closing argument.  Petitioner also asserts that the ineffective assistance alleged in his first three

02  grounds for relief cumulatively caused a prejudicial effect.

03      The Sixth Amendment guarantees a criminal defendant the right to effective assistance of

04  counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Claims of ineffective assistance

05  of counsel are evaluated under the two-prong test set forth in *Strickland*.  Under *Strickland*, a

06  defendant must prove (1) that counsel's performance fell below an objective standard of

07  reasonableness and, (2) that a reasonable probability exists that, but for counsel's error, the result

08  of the proceedings would have been different.  *Strickland*, 466 U.S. at 688, 691-92.

09      When considering the first prong of the *Strickland* test, judicial scrutiny must be highly

10  deferential.  *Strickland*, 466 U.S. at 689.   There is a strong presumption that counsel's

11  performance fell within the wide range of reasonably effective assistance.  *Id*.  The Ninth Circuit

12  has made clear that "[a] fair assessment of attorney performance requires that every effort be made

13  to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

14  challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

15  *Campbell v. Wood*, 18 F.3d 662 (9th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689).

16      The second prong of the *Strickland* test requires a showing of actual prejudice related to

17  counsel's performance.  The petitioner must demonstrate that it is reasonably probable that, but

18  for counsel's errors, the result of the proceedings would have been different.  The reviewing Court

19  need not address both components of the inquiry if an insufficient showing is made on one

20  component.  *Strickland*, 466 U.S. at 697.  Furthermore, if both components are to be considered,

21  there is no prescribed order in which to address them.  *Id*.

22

REPORT AND RECOMMENDATION
PAGE -9

### 1.   *Failure to Interview and Call Witness Warren Hagler*

Petitioner asserts in his first ground for relief that his trial counsel's failure to interview Warren Hagler and to present him as a defense witness at trial constituted ineffective assistance of counsel. The state courts rejected this claim in petitioner's personal restraint proceedings.

The Court of Appeals explained its conclusion as follows:

> <u>Warren Hagler.</u> Harris has provided a sworn declaration by Warren Hagler, who has known Harris since the two were incarcerated together in a juvenile facility. In the summer of 2002, while looking for prostitutes to work for him in another state, Hagler met a young woman named Brandy. Brandy said she would not leave the state because she had to testify. She said a man had assaulted her, but police were threatening her to make her testify to more than just an assault so he would get a longer sentence. Only when Brandy said the man's name was Mzee Harris, did Hagler realize she was talking about his friend. Later that summer, Hagler happened to meet a girl named Malika. When he told Malika about Brandy, he learned for the first time that Malika was Harris's sister. From Hagler's description, Malika knew Hagler had met Bonin-Gamble. According to declarations by Malika Harris and Harris's mother, they relayed Hagler's information to Crowley, but Crowley never contacted him.
>
> Harris argues there was no legitimate reason for failing to interview Hagler and call him to testify. He contends he was prejudiced because there was a reasonable chance the jury would have acquitted him of all charges had they heard Hagler's testimony. We disagree with both contentions.
>
> In evaluating counsel's actions, we must "reconstruct the circumstances of counsel's challenged conduct, and . . . evaluate the conduct from counsel's perspective at the time."[2] Contrary to Harris's contention, defense counsel's duty to investigate "does not necessarily require that every conceivable witness be interviewed."[3] Rather, the duty is either to make a reasonable investigation or to

---

[2] [Court of Appeals' Footnote 7] <u>Strickland</u>, 466 U.S. at 689.

[3] [Court of Appeals' Footnote 8] <u>In re Pers. Restraint of Davis</u>, 152 Wn.2d 647, 739, 101 P.3d 1 (2004) (quoting <u>Bragg v. Galaza</u>, 242 F.3d 1082, 1088, <u>amended by</u> 253 F.3d 1150 (9th Cir. 2001)) (internal quotation marks omitted).

01    make a reasonable decision that makes particular investigations unnecessary.[4]

02          Crowley could reasonably have viewed Hagler's potential testimony as
      problematic.  First, it diverged from the defense theory of the case that "Rodney" had
03    assaulted Bonin-Gamble and Harris had only tried to help her.  Evidence that Bonin-
      Gamble had been consistent in saying that Harris had assaulted her could be seen as
04    inconsistent with Harris's claim of complete innocence.  Second, a major defense
      theme was that Harris was a well-intentioned young man from a stable middle class
05    family into which the drug-involved Bonin-Gamble was trying to insinuate herself.
      Calling Hagler could have required disclosing his connection to Harris, the
06    circumstances of Hagler's meeting with Bonin-Gamble, and at least the portion of
      Hagler's criminal history.  Were the jury to learn he had committed crimes of
07    dishonesty, not to mention his history of promoting prostitution, the disclosures
      would have severely detracted from that theme.  Finally, Hagler's proposed testimony
08    describes a sequence of coincidences that might reasonably be considered highly
      unlikely.
09
10          Given this, Crowley could justifiably view Hagler as a witness who would
      cause more harm than good.  This case is unlike State v. Byrd,[5] which Harris cites.
11    In Byrd, the issue was consent, not identity, and counsel failed to investigate an
      eyewitness to the victim's demeanor at a time she said she was being forced to
11    accompany defendants against her will.[6]

12          Harris has also failed to show prejudice.  While Bonin-Gamble's credibility
13    was in issue, the split verdict shows the corroboration provided by the medical and
      forensic evidence and the young men from the next room is what led the jury to
14    convict on most counts.  Harris has not shown Hagler's proposed testimony would
      likely have affected the jury's view of this crucial evidence.
15

16    (Dkt. No. 18, Ex. 2 at 5-7.)

17          The Court of Appeals' conclusion that counsel's failure to interview Hagler and call him

18    as a witness did not constitute deficient performance is somewhat problematic.  The Court of

19

20    _____

      [4] [Court of Appeals' Footnote 9] Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

21    [5] [Court of Appeals' Footnote 10] 30 Wn.App. 794, 638 P.2d 601 (1981).

22    [6] [Court of Appeals' Footnote 11] Byrd, 30 Wn. App. at 799.


REPORT AND RECOMMENDATION
PAGE -11

01    Appeals, in ruling on this issue, had the benefit of Warren Hagler's declaration.  In that

02    declaration, Hagler provided details about his interaction with Brandy Bonin-Gamble.  The Court

03    of Appeals apparently relied on many of those details to reach its conclusion that counsel's failure

04    to interview Hagler, and to call him as a witness, did not constitute deficient performance.

05          However, the Court of Appeals' analysis of why counsel might have viewed Hagler's

06    potential testimony as problematic makes sense only if counsel had sufficient information to make

07    that assessment.  It is not clear from the record that he did.  The declaration of Billie Harris, which

08    was also provided to the state courts in conjunction with petitioner's personal restraint petition,

09    suggests that the only facts which were passed along to counsel were that Hagler had a

10    conversation with Brandy Bonin-Gamble during the summer of 2002, and that during that

11    conversation Bonin-Gamble told Hagler she was going to testify against petitioner and she was

12    going to say whatever the police wanted her to say because otherwise they would put her in jail.

13    (*See* Dkt. No. 18, Ex. 6 at 33.)  It seems unlikely that this limited amount of information would

14    have allowed counsel to draw the conclusions suggested by the Court of Appeals.

15          Nonetheless, the record amply supports the Court of Appeals' conclusion that petitioner

16    was not prejudiced by counsel's alleged deficient performance because nothing in the record

17    suggests that Hagler's testimony would have altered the outcome of the trial.  It appears that

18    Hagler's testimony would have been inconsistent with the defense theory of the case and with

19    much of the medical and forensic evidence presented by the prosecution.  Moreover, the record

20    suggests that Hagler might not have been a particularly credible witness and it is conceivable that

21    he might have undermined petitioner's credibility.

22          Despite the apparent deficiencies in the analysis by the Court or Appeals, the Court of

REPORT AND RECOMMENDATION
PAGE -12

01  Appeals' conclusion that petitioner was not prejudiced by counsel's alleged deficient performance

02  with respect to Hagler was reasonable.   Petitioner makes no showing to the contrary.

03  Accordingly, petitioner's federal habeas petition should be denied with respect to his first ground

04  for relief.

05          **2.      *Applebee's Receipt***

06          Petitioner asserts in his second ground for relief that counsel's failure to introduce at trial

07  an Applebee's Restaurant receipt constituted deficient performance.   Petitioner provides no facts

08  in his habeas petition to explain the significance of the Applebee's receipt or counsel's failure to

09  introduce it.   A review of petitioner's personal restraint petition offers some insight into these

10  issues.   The personal restraint petition indicates that the receipt in question, which was obtained

11  from a friend of petitioner's, would have shown that food was purchased from Applebee's

12  Restaurant on March 2, 2002. (Dkt. No. 18, Ex. 6 at 30.)  Petitioner's position appears to be that

13  the receipt would have corroborated the testimony of petitioner and his friends that they went to

14  Applebee's on that date to pick up an order of food and left the victim alone in the hotel room.

15  (*Id*., Ex. 6 at 45.)  This was significant because it would have established that the victim had an

16  opportunity to escape from petitioner but did not do so.   (*Id*.)  Petitioner's counsel referred to the

17  receipt in his closing argument to support the proposition that the victim had an opportunity to

18  escape, but he never introduced the receipt into evidence during the trial.  (*Id*., Ex. 6 at 45-46.)

19          The state courts rejected this claim in petitioner's personal restraint proceedings.   The

20  Court of Appeals explained its conclusion as follows:

21          The Applebee's receipt.  During closing argument, Crowley contended the
             State had no answer for Harris's friends' testimony that Bonin-Gamble was left alone
22          in the motel room while the three men got food from the restaurant:

REPORT AND RECOMMENDATION
PAGE -13

01      So they can't explain that away, there's too many witnesses for them
        to explain away, ladies and gentlemen, they can't explain it away.
02

03      They get food, there is a receipt, it happened, Brandy was able to
        leave on her own accord, she didn't because she didn't want to.

04      The prosecutor responded that the only receipt in evidence was from
McDonalds:
05

06      Mr. Crowley mentioned a receipt.  There was no receipt from
        Applebee's.  There is no receipt from Applebee's.  The only receipt is
        from a McDonald's.  And you will notice when you look at that
07      receipt, that two meals were not purchased, just one.  Just one meal.
        There's two people, but only one meal was purchased.  And I would
08      suggest to you that that meal was for Mr. Harris, not for Brandy.

09      Harris provides a declaration from Crowley's investigator, who says she
        obtained an Applebee's receipt from a defense witness, provided it to Crowley and
10      speculates that he lost it.  But even if Crowley's performance was deficient, Harris
        fails to show prejudice.  Counsels' references to the receipt were isolated, minimal in
11      proportion to their overall arguments, and as the State points out, immaterial given
        the undisputed evidence of other times that Harris left Bonin-Gamble alone.  And
12      because the receipt was for takeout food, it would not have established all three men
        in the room left Bonin-Gamble alone in any event.

13

14  (Dkt. No. 18, Ex. 2 at 8.)

15      Counsel's reliance on the receipt during closing arguments suggests that his failure to

16  introduce the receipt into evidence was careless and not strategic.  Nonetheless, the Court of

17  Appeals' conclusion that petitioner was not prejudiced by counsel's failure to introduce the receipt

18  was reasonable.  While the receipt would have established that food was purchased on the date

19  in question, it would not have established that the victim was necessarily left alone.  Moreover,

20  the record makes clear that there were other times during the course of the victim's ordeal when

21  she was left alone which would appear to minimize the significance of her being left alone on this

22  particular occasion. Petitioner offers nothing in these proceedings to demonstrate that the decision

REPORT AND RECOMMENDATION
PAGE -14

01  of the state courts with respect to this claim was contrary to, or constituted an unreasonable

02  application of, federal law.  Accordingly, petitioner's federal habeas petition should be denied with

03  respect to his second ground for relief.

04      **3.     *Closing Argument***

05          Petitioner asserts in his third ground for relief that his counsel's failure to object to the

06  prosecutor's misconduct during closing argument constituted ineffective assistance of counsel.

07  The claim, as presented in the petition, is not a model of clarity.  However, at issue appears to be

08  the prosecutor's reference, during his rebuttal closing argument, to a McDonald's receipt which

09  the prosecutor indicated showed only one meal while petitioner claims that the receipt actually

10  listed two meals.

11          The state courts rejected this claim in petitioner's personal restraint proceedings.  The

12  Court of Appeals explained its decision as follows:

13          <u>Failure to object to closing argument.</u>  Harris also claims Crowley should have
        objected to the rebuttal argument quoted above because the McDonald's receipt

14      actually listed two meals.[7]  He contends the argument unfairly implied he "was a
        mean, sadistic, sexist person" because he shared no food with the hungry, injured

15      Bonin-Gamble.  But Harris does not provide the receipt.  And, as he acknowledges,
        the prosecutor's characterization was understandable given a police officer's

16      description of the receipt.[8]  Harris has not shown the argument exceeded counsel's

17

18          [7] The specific argument at issue was:

19      Mr. Crowley mentioned a receipt.  There was no receipt from Applebee's.  There is no
        receipt from Applebee's.  The only receipt is from a McDonald's.  And you will notice when

20      you look at that receipt, that two meals were not purchased, just one.  Just one meal.
        There's two people, but only one meal was purchased.  And I would suggest to you that

21      that meal was for Mr. Harris, not for Brandy.

22          [8] [Court of Appeals' Footnote 12] The officer testified the receipt showed: "One – two
        cheese burger meals, one – two apple pies, one 16-ounce vanilla shake."

REPORT AND RECOMMENDATION
PAGE -15

01 wide latitude to draw inferences from the evidence.[9]

02      Nor has Harris shown prejudice.  Any problem Harris had with the jury's
perception of his attitude toward women was much more clearly presented by his own
03 testimony on cross-examination discussing Bonin-Gamble's alleged attack on him:
"A woman needs to stay in a woman's place.  When a woman comes out of their
04 place, whatever happens after that happens, you know."

05 (Dkt. No. 18, Ex. 2 at 9.)

06      Petitioner makes no showing that this decision was unreasonable or inconsistent with

07 firmly established federal law.  A prosecutor has wide latitude during closing argument to make

08 reasonable inferences based on the evidence.  *United States v. Molina*, 934 F.2d 1440, 1445 (9th

09 Cir. 1991).  The prosecutor's argument with respect to the McDonald's receipt can be reasonably

10 construed as such an argument.  It thus appears that there was no basis for petitioner's counsel

11 to object to this portion of the prosecutor's closing argument.

12      In addition, this Court must concur with the conclusion of the Court of Appeals with

13 respect to the prejudice issue.  Petitioner's own testimony on cross-examination no doubt affected

14 the jury's perception of his attitude towards women more than the prosecutor's brief reference to

15 the implications to be drawn from a McDonald's receipt.  As petitioner makes no showing that the

16 state courts' decision with respect to this claim was contrary to, or constituted an unreasonable

17 application of, federal law, petitioner's federal habeas petition should be denied with respect to

18 his third ground for relief.

19 */ / /*

20 _____

21      [9] [Court of Appeals' Footnote 13] State v. Stenson, 132 Wn.2d 668, 727, 940 P.2d 1239
(1997).  Harris adds a claim in passing that the prosecutor's arguments were reversible misconduct
22 regardless of counsel's failure to object.  Because the argument was not improper, this claim also
fails.

REPORT AND RECOMMENDATION
PAGE -16

01     **4.**    ***Cumulative Prejudice***

02         Petitioner asserts in his fourth ground for relief that the three claimed instances of

03 ineffective assistance accumulated to cause prejudice.  Although no single error may warrant

04 habeas relief, "the cumulative effect of multiple errors may still prejudice a defendant."   *See*

05 *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002) (*citing United States v. Frederick*, 78

06 F.3d 1370, 1381 (9th Cir. 1996)).  In this case, petitioner has established no constitutional error

07 arising out of his claims.  Accordingly, there is nothing to accumulate to the level of a

08 constitutional violation. *See Mancuso* 292 F.3d at 957 (*citing Fuller v. Roe*, 182 F.3d 699, 704

09 (9th Cir. 1999), overruled on other grounds, *Slack v. McDaniel,* 529 US 473 (2000)).  Thus,

10 petitioner's claim of cumulative error is without merit and his federal habeas petition should

11 therefore be denied with respect to his fourth ground for relief.

12 Blakely Claim

13         Petitioner asserts in his fifth ground for federal habeas relief that his exceptional sentence

14 violates the rule announced in *Blakely v. Washington*, 542 U.S. 296 (2004).  The Washington

15 Court of Appeals rejected this claim "because <u>Blakely</u> is not given retroactive effect and Harris's

16 conviction was final before <u>Blakely</u> was issued."  (Dkt. No. 18, Ex. 2 at 10 (footnote omitted).)

17         Though the United States Supreme Court recently granted certiorari in  *Burton v.*

18 *Waddington*, No. 03-35095, 2005 U.S. App. LEXIS 15497 (9th Cir. July 28, 2005), *cert. granted*,

19 126 S. Ct. 2352 (2006), and will address the issue of *Blakely* retroactivity, there is no current

20 United States Supreme Court precedent holding that *Blakely* may be applied retroactively to cases

21 such as petitioner's which became final before *Blakely* was decided.  Accordingly, petitioner's

22 federal habeas petition should be denied with respect to his fifth ground for relief as well.

01

CONCLUSION

02            For the reasons set forth above, this Court recommends that petitioner's federal habeas

03   petition be denied and that this action be dismissed with prejudice.  A proposed order accompanies

04   this Report and Recommendation.

05            DATED this 18th day of January, 2007.

06
                                        Mary Alice Theiler
07                                        United States Magistrate Judge

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -18